EL PUEBLO DE PUERTO RICO, apelado, *v.* LUIS A. RODRÍGUEZ ROMÁN, acusado y apelante.

*Número:* CR-88-103      *Resuelto:* 21 de febrero de 1991

*Luis A. Rodríguez Román, pro se; Luis Arturo Sánchez Rodríguez, Carmen Ana Rodríguez Maldonado y Enrique Rivera Mendoza*, de la *Sociedad para Asistencia Legal*, abogados del apelante; *Norma Cotti Cruz, Procuradora General Interina*, y *Ricardo E. Alegría Pons, Procurador General Auxiliar*, abogados de El Pueblo.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

I

Ante el Tribunal Superior, Sala de Arecibo, un Jurado encontró culpable al acusado apelante Luis A. Rodríguez Román por los delitos de asesinato en primer grado, tentativa de robo e infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418.

El 12 de septiembre de 1988 fue sentenciado a una pena de reclusión de noventa y nueve (99) años por el delito de asesinato en primer grado, seis (6) años por el delito de tentativa de robo, cinco (5) años por infracción al Art. 8 de la Ley de Armas de Puerto Rico, *supra,* y un (1) año por infracción al Art. 6 de la Ley

de Armas de Puerto Rico, *supra*. Las penas fueron impuestas para cumplirse consecutivamente, excepto las violaciones a la Ley de Armas de Puerto Rico.

Inconforme con esta decisión, presentó un escrito de apelación mediante el cual alegaba la comisión de varios errores que pueden resumirse de la manera siguiente: (1) que erró el juzgador de los hechos al declarar culpable al acusado apelante con una identificación poco confiable que no derrotó la presunción de inocencia; (2) que también erró al declararlo culpable del delito de tentativa de robo, cuando dicho cargo no fue sostenido por la prueba desfilada en el juicio, y (3) que erró, además, al declararlo culpable con una prueba que no estableció su culpabilidad más allá de toda duda razonable.(1)

## II

El Ministerio Público presentó como testigos a Ileana I. Salgado Méndez, Julio E. Meléndez Pérez, Fernando Cortés Rodríguez, Ramón Luis Pagán Manzano y el Agente Víctor M. Vélez Pellicier. Sometió en evidencia también una serie de fotografías del lugar de los hechos y del vehículo involucrado en el accidente. De otra parte, la defensa presentó como testigos a Marcos Sierra Medina, Manuel Rodríguez García, Víctor Padró Oliveras, Víctor Real y al imputado Luis A. Rodríguez Román.

El informe médico forense, informe toxicológico y el informe de análisis balístico se estipularon.

Pasemos ahora a resumir los hechos según éstos surgen de la exposición narrativa de la prueba.

En la noche del 28 de junio de 1987, la víctima Ramón Luis Acevedo Vélez se encontraba con la testigo Ileana I. Salgado Méndez, su novia, en un centro comercial de Manatí. Habían ido a ese lugar para comprar un *sandwich* al negocio Subway. La

---

(1) En su escrito de apelación también incluyó como error que el tribunal de instancia no hubiese admitido en evidencia prueba sumamente pertinente para demostrar la inocencia del acusado apelante, causándole grave perjuicio. En su alegato, el apelante renuncia a este señalamiento de error.

víctima se bajó del carro, fue a dicho negocio y, al regresar y montarse en su vehículo, se le acercaron dos (2) hombres. Éstos se pararon al lado del vehículo y uno de ellos golpeó en el cristal con un revólver y dijo: "Dame el carro que esto es un asalto." La víctima le puso los seguros a la puerta. En ese momento el acusado apelante se inclinó y la testigo Salgado Méndez pudo ver su cara a través del cristal de la puerta del conductor. El acusado golpeó con su revólver sobre el cristal al mismo tiempo que decía: "Esto está duro." Cuando dijo esto, otra persona que estaba detrás de él le quitó el revólver, golpeó dos (2) veces en el cristal, lo rompió y luego disparó contra Ramón Luis Acevedo Vélez. Antes de los disparos, la víctima había tratado de encender el vehículo. La testigo Salgado Méndez trató de salir del vehículo, pero no pudo abrir el seguro, pues se encontraba nerviosa. Luego del disparo, el acusado apelante y la otra persona salieron corriendo hacia la parte de atrás del carro. La testigo entonces pudo salir del vehículo e ir al negocio Subway donde le pidió a un empleado, Julio E. Meléndez Pérez, que llamara a la Policía. Éste le indicó que ya lo había hecho.

La testigo describió al acusado apelante como "trigueño, alto no tan alto y peinado para atrás, con suéter blanco y mahón azul". E.N.P., pág. 2. Durante el juicio identificó al acusado en Sala como la persona que había visto ese día. Indicó que no pudo ver, y por lo tanto no podía identificar, a la otra persona que había estado con el acusado, pero que éste era un hombre blanco. Continuó atestiguando Salgado Méndez que el 2 de julio de 1987 fue a la tienda de calzado Kinney y allí vio a una persona que se le pareció al que los había asaltado. Llamó al agente investigador Víctor M. Vélez Pellicier y se lo informó. Esta persona era un hombre blanco que resultó ser Nelson Rodríguez, hermano del acusado. Ese mismo día, estando en el cuartel de la Policía, la testigó vio en el teléfono público que está frente al cuartel a un muchacho, el acusado, con una muchacha, Maritza Rodríguez Román, hermana de éste. Inmediatamente llamó al agente Vélez Pellicier y le informó que la persona que estaba al teléfono sí era el que los

había asaltado. Salgado Méndez declaró, además, que los asaltantes no se llevaron prenda alguna.

El próximo testigo de cargo fue el joven Julio E. Meléndez Pérez, empleado del negocio Subway. Éste atestiguó que cuando estaba dentro del negocio oyó las detonaciones, miró hacia afuera y vio dos (2) personas cerca del vehículo de la víctima. No las puede identificar porque afuera estaba obscuro y adentro estaba la luz que tiene el frente del negocio y que se reflejaba en el cristal. Corroboró el hecho de que la testigo Salgado Méndez le pidió que llamara a la Policía.

El tercer testigo fue Fernando Cortés Rodríguez. Éste declaró que el día de los hechos iba manejando su grúa en compañía de su esposa cuando tuvo que frenar abruptamente para no arrollar a una persona que le cruzó por el frente de la grúa corriendo. Esta persona llevaba un revólver en las manos. Otra persona cruzó corriendo por la parte posterior de la grúa. La persona que cruzó por el frente de la grúa se le pareció a un hermano de Georgina, quien es hermana del acusado. Aunque no pudo identificar al acusado, atestiguó que éste se parecía a la persona que iba corriendo.

El próximo testigo fue Ramón Luis Pagán Manzano, un técnico de emergencias médicas que trabajaba para Unimed and Ambulance Service (en adelante Unimed). La noche de los hechos éste estaba frente a Unimed cuando oyó dos (2) disparos. Corrió hacia el interior de las oficinas de Unimed y allí se quedó cerca de la puerta. Vio dos (2) hombres corriendo, uno de los cuales llevaba un revólver. Éste se le pareció a una persona que él había visto pidiendo pesetas. Identificó en corte abierta al acusado como la persona que vio corriendo la noche de los hechos.

El último testigo fue el agente que investigó los hechos, Víctor M. Vélez Pellicier. Este testigo corroboró parte del testimonio prestado por la testigo Salgado Méndez respecto a lo que ésta le había expresado el día de los hechos y lo ocurrido en el cuartel de la Policía cuando él llevó allí a Nelson Rodríguez, hermano del acusado, y cuando la testigo Salgado Méndez identificó al acusado

apelante como la persona que la había asaltado y le había disparado a su novio, la víctima Ramón Luis Acevedo Vélez.

La defensa entonces presentó al testigo Marcos Sierra Medina con el aparente propósito de impugnar al testigo de cargo Ramón Luis Pagán Manzano. Luego, la defensa trató de establecer la defensa de coartada con los testigos siguientes: el padre del acusado Manuel Rodríguez García, Víctor Padró Oliveras (profesor del Departamento de Instrucción Pública), Víctor Real y el propio acusado apelante Luis Arturo Rodríguez Román. El testimonio de estas personas iba encaminado a probar que al ocurrir los hechos en la noche del 28 de junio de 1987, el acusado apelante se encontraba en la barriada San José en el negocio de Frank Mendoza.

## III

La defensa plantea que la identificación que se hizo del acusado apelante no fue confiable. No le asiste la razón. Veamos.

■ La norma vigente para evaluar la confiabilidad de la identificación del acusado es la de conjugar la totalidad de las circunstancias. Los elementos a considerar son: (1) la oportunidad que tuvo el testigo de observar al acusado en el momento en que ocurre el acto delictivo; (2) el grado de atención del testigo; (3) la corrección de la descripción; (4) el nivel de certeza en la identificación, y (5) el tiempo transcurrido entre el crimen y la confrontación. *Pueblo v. Ortiz Pérez*, 123 D.P.R. 216 (1989); *Pueblo v. Mattei Torres*, 121 D.P.R. 75 (1988); *Pueblo v. Márquez y Bermúdez*, 122 D.P.R. 93 (1988); *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302 (1987).

■ Cabe señalar que, aunque se favorece la utilización estricta de los mecanismos de identificación provistos en la Regla 252 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, su omisión no derrota necesariamente el proceso. Utilizándose la identificación extrajudicial, la judicial o ambas, a la luz de la totalidad de las circunstancias se puede sostener una identificación jurídicamente

válida. *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172, 183–185 (1978); *Pueblo v. Rey Marrero*, 109 D.P.R. 739, 749 (1980); *Pueblo v. García Reyes*, 113 D.P.R. 843, 847–848 (1983).

La identificación de un acusado tiene que ser adjudicada a la luz de las circunstancias particulares de cada caso. "En apelación, la conclusión del juzgador de hechos sobre la suficiencia de prueba confiable para la identificación de un acusado tiene todo el respeto y validez que ordinariamente se extiende a las determinaciones de hechos." *Pueblo v. Ortiz Pérez*, supra. El juzgador de los hechos está en mejor posición para adjudicar credibilidad, por lo tanto, sus determinaciones sólo se deben suplantar si no están sostenidas por la prueba. *Pueblo v. Mattei Torres*, supra; *Pueblo v. Ortiz Pérez*, supra.

Debe tenerse presente, también, que basta la evidencia directa de un testigo que le merezca al juzgador entero crédito para probar cualquier hecho, salvo, claro está, que por ley se disponga otra cosa. Regla 10(D) de Evidencia, 32 L.P.R.A. Ap. IV; *Pueblo v. Acevedo Quiñones*, 100 D.P.R. 894, 988 (1972).

La testigo ocular Ileana I. Salgado Méndez observó al acusado apelante al momento de ocurrir los hechos cuando éste se acercó y miró por la ventana de cristal del lado del conductor. El cristal era claro y había buena visibilidad. Lo pudo observar por varios segundos "porque su rostro estaba como a 2 ó 3″ del cristal". E.N.P., pág. 2. Lo describió como "trigueño, alto no tan alto y peinado para atrás, con suéter blanco y mahón azul". Íd. Esto ocurrió el 28 de junio de 1987.

Apenas cuatro (4) días más tarde, el 2 de julio, la testigo visitó la tienda de calzado Kinney y allí vio a una persona que, aunque hombre blanco, se le pareció al que los había asaltado. Esta persona resultó ser Nelson Rodríguez, hermano del acusado. Ese mismo día, estando en el cuartel de la Policía, la testigo Salgado Méndez vio al lado de un teléfono al acusado y de manera enfática lo identificó como la persona que los había asaltado. La testigo también identificó al acusado en corte abierta. Cabe señalar, además, que el Ministerio Público sometió como evidencia demos-

trativa ante el Jurado a ambos hermanos, al acusado y a su hermano Nelson, para que éstos pudiesen apreciar que a pesar de tener un color distinto de piel, tenían un parecido fisionómico. Además de la testigo Salgado Méndez, el Ministerio Público presentó al testigo Fernando Cortés Rodríguez quien el día de los hechos vio a una persona, que se le pareció al acusado, corriendo con un revólver. La defensa trató de impugnar la credibilidad de estos testigos e impugnar la confiabilidad de sus testimonios.

██ Ahora bien, las contradicciones sólo ponen en juego la credibilidad; le toca al juzgador de los hechos resolver. "[S]abido es que la máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda la declaración de un testigo porque se haya contradicho o faltado a la verdad respecto a uno o más particulares. En otras palabras, es imprescindible armonizar toda la prueba y analizarla en conjunto a los fines de arribar al peso que ha de concedérsele a la prueba en su totalidad. *García Rivera v. Tribunal Superior*, 86 D.P.R. 823 (1962)." *Pueblo v. López Rivera*, 102 D.P.R. 359, 366 (1974). Véase *Pueblo v. Cruz Negrón*, 104 D.P.R. 881, 883 (1976).

██ El Jurado, juzgador de los hechos en este caso, dirimió credibilidad y evaluó la confiabilidad de la identificación. En ausencia de prejuicio, parcialidad o error manifiesto, no es nuestra función alterar estas determinaciones. *Pueblo v. Cabán Torres*, 117 D.P.R. 645 (1986); *Pueblo v. Cruz Negrón*, supra.

La totalidad de la prueba desfilada, creída por el Jurado, demuestra que la identificación del acusado fue confiable. El error señalado no se cometió.

## IV

Plantea la defensa que la prueba desfilada no sostiene la convicción por el delito de tentativa de robo. No tiene mérito este señalamiento de error.

██ El Art. 173 del Código Penal, 33 L.P.R.A. sec. 4279, tipifica el delito de robo así:

> Toda persona que se apropiare ilegalmente de bienes muebles pertenecientes a otra, ya sustrayéndolos de su persona, o de la persona en cuya posesión se encuentre[n], ya en su inmediata presencia y contra su voluntad, por medio de la violencia o de la intimidación, . . . .

■ El Art. 26 del Código Penal, 33 L.P.R.A. sec. 3121, por su parte, define tentativa de delito así:

> Existe tentativa cuando la persona realiza acciones o incurre en omisiones inequívocamente dirigidas a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad.

Con respecto a estos artículos, véase el Análisis Editorial de la profesora Nevares-Muñiz, *Código Penal de Puerto Rico: revisado y comentado*, San Juan, Ed. Rev. C. Abo. P.R., 1986, págs. 54–57 y 306–307.

En el caso de autos, la testigo Salgado Méndez declaró que el acusado le dio al cristal de la puerta del conductor y les dijo: "Dame el carro que esto es un asalto." E.N.P., pág. 1. También atestiguó que la víctima trató de prender el carro y que los asaltantes trataron de abrirle la puerta, pero que éste lo impidió poniéndole el seguro. Casi al mismo tiempo es que golpean el cristal del vehículo, disparan e hieren de muerte a la víctima. Luego que esto ocurre es que desisten de su intento de despojar a la víctima de su vehículo y salen corriendo.

Tomando en consideración la totalidad de la prueba desfilada y las circunstancias particulares de este caso, resulta innegable que se configuró y probó el delito de tentativa de robo.

V

Por último, plantea el acusado apelante que la prueba no estableció su culpabilidad más allá de toda duda razonable. Tampoco le asiste la razón.

■ Para cumplir con el requisito de probar la culpabilidad del imputado de delito más allá de toda duda razonable no basta con que el Ministerio Fiscal presente prueba que sea meramente

suficiente. Se requiere que la prueba presentada sea suficiente en derecho. "Ello significa que la evidencia presentada, 'además de suficiente, *tiene que ser satisfactoria,* es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupación' o en un ánimo no prevenido. . . . *Pueblo v. Carrasquillo Carrasquillo,* [102 D.P.R. 545,] 552 [(1962)]. Esa 'insatisfacción' con la prueba es lo que se conoce como 'duda razonable y fundada'. *Pueblo v. Toro Rosas,* 89 D.P.R. 169 (1963)." (Énfasis en el original.) *Pueblo v. Cabán Torres,* supra, pág. 652.

■ Reiteradamente hemos resuelto que las determinaciones de hecho que hace el juzgador de instancia son merecedoras de gran deferencia por nuestra parte y que no intervendremos con el veredicto condenatorio de un Jurado o juez en ausencia de una demostración de que hubo pasión, prejuicio o error manifiesto. *Pueblo v. Cabán Torres,* supra; *Pueblo v. Borrero Robles,* 113 D.P.R. 387 (1982); *Pueblo v. Millán Meléndez,* 110 D.P.R. 171 (1980).

■ Con respecto a la prueba de coartada presentada por el acusado apelante, ésta obviamente no le mereció crédito alguno al juzgador. El Jurado, juzgador de los hechos en este caso, tenía facultad para darle a dicha prueba el valor probatorio que estimó adecuado. *Pueblo v. De Jesús Rivera,* 113 D.P.R. 817, 826 (1983); *Pueblo v. Acosta Acosta,* 107 D.P.R. 68 (1978); *Pueblo v. Moreu Pérez,* 96 D.P.R. 60 (1968).

■ Hemos analizado con detenimiento la prueba en el caso de autos y no encontramos base suficiente en el récord para intervenir con la apreciación y adjudicación de credibilidad que de la prueba presentada hizo el foro de instancia. "[E]n nuestro ánimo [esta prueba no causa] una insatisfacción o intranquilidad de conciencia tal que amerite que intervengamos con la credibilidad que le mereciera el testimonio del referido testigo al juzgador de los hechos a nivel de instancia." *Pueblo v. Cabán Torres,* supra, pág. 657. Véase *Pueblo v. Rivero, Lugo y Almodóvar,* 121 D.P.R. 454 (1988). El Ministerio Público estable-

ció todos los elementos de los delitos imputados con prueba satisfactoria y "suficiente en derecho". El error planteado no se cometió.

Por las razones antes expresadas, *se dictará sentencia en la que se decreta la confirmación de las sentencias apeladas.*

El Juez Asociado Señor Rebollo López no intervino.