Sánchez Martínez, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Esta apelación plantea solo dos controversias: si se probó la culpabilidad del apelante Angel Guzmán Vázquez fuera de duda razonable y si la multa que se le impuso es muy severa a la luz de la conducta imputada. Por las razones que prosiguen confirmamos la sentencia apelada.
El apelante Angel Guzmán Vázquez fue denunciado por el delito menos grave de alteración a la paz, Art. 260 del Código Penal de Puerto Rico, 33 L.P.R.A. sec. 4521. Se le imputó que el 9 de junio de 1998, a las 9:40 de la noche, "hizo uso de lenguaje grosero, profano o indecoroso en presencia o al alcance del oído de mujeres o niños [y] le indicó a la Sra. María Vázquez Negrón, la cual es gerente [del restaurante Golden Skillet de Guaynabo,] las siguientes palabras, "Yo tengo mis huevos en mi sitio.["] y a la vez se tocó sus partes íntimas, [sjintiéndose ésta ofendida y temerosa por su seguridad". Autos originales, a la pág. 1.
*1114 Celebrado el juicio, el apelante Guzmán Vázquez fue hallado culpable y sentenciado a pagar quinientos dólares ($500) de multa más las costas. Una moción de reconsideración que presentó después, fue rechazada de plano. Oportunamente apeló. En su escrito de apelación hace dos señalamientos de error: (1) que el delito no fue probado fuera de duda razonable; y (2) que la multa impuesta es muy severa pues no guarda proporción con la conducta imputada.
En el juicio declararon como testigos de cargo la perjudicada María E. Vázquez Negrón, la señora Eva Ramos Figueroa y la mujer policía Ileana Dentiz Rodríguez. La siguiente exposición narrativa de la prueba oral ha sido tomada sustancialmente del resumen que hace el Procurador General en su alegato.
La señora María E. Vázquez Negrón declaró, en síntesis, que era Gerente del negocio Golden Skillet sito en el Camino Alejándrino de Guaynabo. Indica que conoce al apelante Guzmán hace dos años pues éste es el Gerente de Operaciones de la Compañía Golden Skillet. Testificó que el día de los hechos, 9 de junio de 1998, en horas de la noche, se encontraba en la tienda atendiendo una llamada telefónica cuando uno de los empleados le dice que habían unas personas en el servicarro solicitando una orden y que al bajarse en la ventanilla comenzaron a restregar la misma. Los empleados y ella tuvieron miedo porque ahí se habían dado varios asaltos previamente. Ella le indica al empleado que cierre la puerta del negocio en lo que los individuos se iban para luego abrirlas. Declara que momentos después de cerrar la puerta, vuelven a restregarla y ella fue a abrirla. Allí, pidiendo entrar, estaba el apelante.
La señora Vázquez Negrón continuó declarando que entonces el apelante entró preguntando, en voz alta y con fuerte olor a alcohol, por qué la puerta estaba cerrada. Al entrar a la tienda el apelante comenzó a buscar en todos los sitios y a preguntar por qué no tenían el "Big Skillet" a lo que ella le indicó que una de las dos máquinas de freir pollo estaba dañada. El apelante entonces se fue a la parte del frente del negocio y empezó a abrir las papas majadas señalando que "quéporquería era esa"-, tiró una bolsa contra el piso diciendo que por eso las cosas estaban como estaban, se agarró los pantalones y dijo que él tenía los huevos bien puestos en su sitio.
La testigo declaró que se sintió ofendida y que el apelante le faltó el respeto frente a otros empleados. En ese momento había tres, uno en la parte de atrás y dos en la parte del frente. Indica la testigo que la tienda tiene solamente una puerta de entrada y salida, la que había cerrado. Cuando vio al apelante por primera vez él se encontraba alterado, y, "apestaba" a ron.
En el contrainterrogatorio, la testigo declaró que la hora de cierre el día de los hechos era a las 10:00 p.m. y que cuando llegó el apelante la tienda estaba cerrada antes de esa hora. Aceptó la testigo que en otras ocasiones el apelante le llamó la atención por confeccionar y consumir en la tienda alimentos traídos de fuera. Aceptó que el apelante Guzmán también le había llamado anteriormente la atención por haber permitido que una de las cajeras de la tienda abandonara su área de trabajo y por cambiar cheques personales que resultaron no tener fondos a pesar de esto ser contrario a las normas de la empresa. Negó que hubiese amenazado con "chabar" al apelante por todo esto ni que su esposo, que es policía, tuviese nada que ver con este caso.
La segunda testigo de cargo fue la señora Eva Ramos Figueroa. Esta declaró, en síntesis, que para la fecha de los hechos trabajaba como cajera en el Golden Skillet de Guaynabo. El día de los hechos se cerró la puerta de la tienda porque los clientes estaban restregando la ventana y tenían una actitud agresiva. Indica que el apelante llegó a la tienda y preguntó por la gerente. Entonces él comenzó a restregar todas las cosas y hablaba en voz alta. Le decía a la gerente que allí no había productos para la venta. Declaró que el apelante se cogió sus partes bajas y dijo "que eso es para que tú veas María que yo tengo los huevos en mi sitio”.
En el contrainterrogatorio, la señora Ramos Figueroa declaró que los hechos sucedieron alrededor de las 9:40 de la noche y que la puerta la cerró la gerente, María E. Vázquez. Indicó que cuando el apelante llegó a la tienda le recriminó a la señora Vázquez el porqué había cerrado la tienda antes de las diez de la noche y se quejaba de que ya habían recogido todos los productos para la venta.
La tercer testigo de cargo fue la mujer policía Ileana Dentiz Rodríguez. Esta declaró que el día de *1115 los hechos estaba patrullando por la calle y recibió una llamada por la radio para que pasara por el Golden Skillet donde había una querella de alteración a la paz. Ese día entrevistó a la señora María Vázquez quien le indicó que la puerta de la tienda se encontraba cerrada porque había unos individuos sospechosos en la parte de afuera. Relató la mujer policía que María Vázquez le dijo que a eso de las 9:40 p.m. llegó el apelante, alterado y en aparente estado de embriaguez, preguntándole por qué había cerrado la puerta y diciéndole que él tenía sus partes íntimas en su sitio.
La mujer policía entrevistó también a Eva Ramos, quien le indicó lo mismo que María Vázquez. Testificó, además, que María Vázquez le proveyó el número del celular y del teléfono de la oficina para localizar al apelante, indicó que esa noche se comunicó con él. La perjudicada le preguntó si la entrevista podía ser al otro día pero la mujer policía le explicó que no. Ella entrevistó al apelante y éste negó que los hechos ocurrieran según relatados por María Vázquez. No entrevistó a nadie más. Desconoce por qué la perjudicada se oponía a que se entrevistara al apelante Guzmán ese mismo día.
El apelante presentó prueba a su favor consistente en los testimonios de Paulino de la Paz Blanco, Betty Santiago Santiago y en su propia declaración.
Paulino de la Paz Blanco declaró que es estudiante y que para el día de los hechos trabajaba de cocinero en el Golden Skillet. Indicó que ese día dos personas fueron por la ventanilla a comprar, que fueron directamente a pedir en la ventanilla del servicarro. Sus compañeras de trabajo se asustaron y cerraron la puerta principal. Testificó que el apelante llegó y tocó para que le abrieran, pues encontró la puerta cerrada.
Al entrar, el apelante Guzmán empezó a regañar a la Gerente (María E. Vázquez) porque la puerta estaba cerrada. Indica que hubo un intercambio de palabras entre ellos. El apelante le preguntaba a la Gerente el porqué la puerta estaba cerrada y no había mercancía para vender. Declaró que él estaba en la parte de atrás de la tienda y no pudo ver o escuchar todo lo que sucedía. Tampoco escuchó ninguna palabra ofensiva de parte del apelante hacia María E. Vázquez.
En el contrainterrogatorio declaró que él se percató de que las personas que vinieron a comprar fueron directamente a la ventanilla la cual generalmente está cerrada y se abre solamente cuando se va a entregar la comida o el dinero. Indicó que el apelante llegó y tocó duro la puerta con las llaves; que hablaba en voz alta y él escuchó en la parte de atrás lo que él decía. Declaró que no podía citar lo que el apelante decía porque las máquinas se lo impedían. No vio al apelante tirando cosas en la tienda pues se mantuvo en su área de trabajo y no fue hacia el frente.
Betty Santiago Santiago declaró que es secretaria de Personal en Golden Skillet. Indica que conoce a Eva Ramos porque se relacionaba con ella cuando bajaba a almorzar al restaurante. Declaró que la última vez que habló con Eva Ramos fue el 8 de junio y fue por teléfono. Indicó que sabía que era ella porque se identificó, dijo su nombre y le reconoció la voz. Testificó que Eva Ramos le indicó que su despido fue injustificado y que unos cheques que se cambiaron en el restauiante eran para la Gerente María Vázquez, quien necesitaba un dinero, por lo que ella no era responsable de ese dinero.
En el contrainterrogatorio declaró que ella trabaja de 8:00 a 12:00 y de 1:00 a 5:00, por lo que desconoce lo que acontece en el restaurante en horas de la noche. La verdad de lo que le comunicó la persona que la llamó por teléfono no le consta de propio y personal conocimiento.
El apelante Guzmán declaró en su propio beneficio. 
El apelante Guzmán indicó que es Ejecutivo de Golden Skillet y se desempeña como Director de Operaciones. Con relación al día de los hechos, declaró que se encontraba supervisando el área de San Juan. Sus oficinas están en Alejandrino, Guaynabo. Ese día, 9 de junio de 1998, a eso de las 9:40 de la noche llegó a la Tienda de Alejandrino en Guaynabo y tocó la puerta con su llave. Indica que ese día no había bebido. La persona que le abrió fue María [Vázquez]. Testificó que se molestó pero se quedó tranquilo y sin alterarse. Al entrar en la tienda empezó a inspeccionar visualmente la misma y vio sólo tres presas de pollo para la venta. Le habló un poco alto a la gerente cuando le llamó la atención. El apelante negó en términos generales las imputaciones.
*1116 A base de toda la prueba desfilada el tribunal a quo declaró culpable al apelante.
El primer señalamiento de error está dirigido a cuestionar la determinación del tribunal a quo de darle credibilidad al testimonio de la señora María Vázquez a pesar de que era evidente que ella tenía suficientes motivos para querer mentir y perjudicar al apelante en este caso. Su alegato alude a todas , las instancias en las que el apelante Guzmán se había visto precisado a llamarle la atención a su subalterna ante el continuo y repetitivo patrón de incumplimientos de parte de ella respecto a las normas administrativas de la empresa. Y es innegable que la relación de trabajo entre la señora Vázquez y el apelante Guzmán estaba salpicada de episodios de gran tirantez atribuidos al celo con que el apelante Guzmán pretendía ejercer las funciones supervisorias de su cargo frente a la dejadez con que la señora Vázquez parecía cumplir sus obligaciones gerenciales.
Pero aún cuando es posible pensar que es cierto que la señora Vázquez tenía motivos para perjudicar al apelante, eso no obligaba al tribunal apelado a descartar el testimonio de ella si, después de considerar la prueba de impugnación que tuvo ante sí, junto a la evidencia de comportamiento (demeanor) de todos los testigos, el tribunal quedaba convencido de que en lo crucial del evento acaecido ella estaba diciendo la verdad.
El apelante también se refiere a ciertas contradicciones en el testimonio de las testigos de cargo en tomo a la hora en que ocurrieron los hechos y a la identidad de la persona que abrió la puerta del establecimiento para que el apelante entrara. Pero estas contradicciones periferales no controvierten el hecho de que el apelante encontró la puerta cerrada antes de la hora mandada por el patrono, que alguien le abrió la puerta y que se suscitó un incidente entre la señora Vázquez y el apelante.
En el fondo, nótese, pues, que todos estos argumentos se refieren a prueba de impugnación que tuvo ante sí el tribunal sentenciador antes de emitir su fallo, que fue ponderada debidamente, y que el fallo se produjo al cabo del proceso mental necesario para llevar al juzgador de los hechos a tener la certeza evidenciarla necesaria para creer que el apelante había incurrido en el hecho delictivo imputado. A fuerza de tanto decirlo, ni necesario pareciera repetir que, como tribunal apelativo, nosotros no estamos autorizados a sustituir con nuestro propio criterio el criterio del tribunal a quo al dirimir los conflictos que usualmente presenta la prueba aducida por las partes. Pueblo v. Rodríguez Santana, 146 D.P.R. _ (1998), 98 J.T.S. 141, a la pág. 234. Basta con que la prueba presentada por el Ministerio Público sea suficiente en derecho. Id. Esto es, que la evidencia presetada produzca certeza evidenciaría en una conciencia exenta de preocupación o en un ánimo no prevenido. La insatisfacción con la prueba es lo que se conoce como duda razonable. Pueblo v. León Martínez, 132 D.P.R. _ (1993) 93 J.T.S. 22; Pueblo v. Rodríguez Román, 128 D.P.R. 121 (1991); Pueblo v. Cabán Torres, 117 D.P.R. 645 (1986); Pueblo v. Cruz Granados, 116 D.P.R. 3 (1984).
Por supuesto, el que la culpabilidad del acusado tenga que ser probada fuera de duda razonable no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida a los fines de establecer la culpabilidad del acusado con certeza matemática. Sólo se exige que la prueba establezca aquella certeza evidenciaría que convence, dirige la inteligencia y satisface la razón. Pueblo v. Rosario Reyes, 138 D.P.R. _ (1995), 95 J.T.S. 74; Pueblo v. Pagán, Ortiz, 130 D.P.R. _ (1992), 92 J.T.S. 56; Pueblo v. Bigio Pastrana, 116 D.P.R. 748 (1985).
Hemos hecho nuestro propio análisis de la pmeba desfilada, según ésta surge de la exposición narrativa de la prueba oral, y estamos convencidos de que el tribunal sentenciador tuvo ante sí prueba suficiente y satisfactoria para sostener el fallo condenatorio contra el apelante. No se cometió, por tanto, el primer error señalado.
Mediante el otro error aducido el apelante Guzman cuestiona la severidad de la pena por considerarla desproporcionada a la conducta imputada. Tampoco tiene razón.
Al imponer las penas, el juzgador ha de considerar la naturaleza del delito y decretar las penas dentro de los límites fijados por el estatuto correspondiente. Pueblo v. Hernández Mercado, 126 D.P.R. 427 (1990); Pueblo v. Echevarría Rodríguez 128 D.P.R. 299 (1991). En ausencia de abuso de discresión o circunstancias atenuantes, un foro apelativo no debe intervenir con la pena impuesta por el tribunal sentenciador. Pueblo v. Rodríguez Santana, 146 D.P.R. _ (1998), 98 J.T.S. 141, a la pág. *1117 234; Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989).
En el caso de epígrafe la multa impuesta está dentro de los límites establecidos por el Art. 260 del Código Penal, supra, que dispone que el tribunal sentenciador puede imponer hasta seis meses de reclusión o multa que no excederá de quinientos dólares o ambas penas a discresión del Tribunal. A la luz de la prueba desfilada ante el tribunal a quo y la naturaleza de la conducta probada, no creemos que dicho foro hubiese abusado de su discreción al imponerle al apelante una multa de quinientos dólares, que después de todo ni siquiera es la pena máxima prevista para ese delito.
Con estos antecedentes, se confirma la sentencia apelada.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General