# 2003 DTA 79

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL II DE BAYAMON

EL PUEBLO DE PUERTO RICO
Apelado

v.

JOSEPH IZZO HERNANDEZ
Apelante

Núm. KLAN-00-00982

San Juan, Puerto Rico, a 23 de abril de 2003

Panel integrado por su Presidente, el Juez Arbona Lago,
y los Jueces Aponte Hernández y Urgell Cuebas

## TEXTO COMPLETO DE LA SENTENCIA

El apelante, señor Joseph Izzo Hernández, nos solicita la revocación de las sentencias emitidas el 25 de agosto de 2000 por el Tribunal de Primera Instancia, Sala de Bayamón. Mediante las mismas, dicho foro le impuso dos sentencias consecutivas de 99 años cada una por dos delitos de Robo (en su modalidad de reincidencia) y varias otras, a ser cumplidas concurrentemente con las primeras, por múltiples infracciones a la Ley de Armas.

Por los fundamentos que expondremos a continuación, confirmamos las sentencias apeladas.

## I

El señor Joseph Izzo Hernández (apelante) fue imputado de dos (2) cargos por el delito de robo (Art. 173 del Código Penal), cuatro (4) cargos por infracciones al Artículo 8 de la Ley de Armas (25 L.P.R.A. sec. 418), y seis (6) cargos por infracción al Artículo 6 de la misma ley (25 L.P.R.A. sec. 416), por hechos ocurridos los días 19 de diciembre de 1999 y 10 de enero de 2000.

El juicio fue celebrado ante jurado y éste rindió veredicto de culpabilidad por todos los cargos imputados. El 25 de agosto de 2000, el Tribunal de Primera Instancia, Sala de Bayamón, dictó sentencia imponiéndole al apelante las siguientes sentencias:

**Hechos del 16 de diciembre de 1999**

DLA2000G0424 Artículo 8 Ley de Armas 10 años concurrente
DLA2000G0423 Artículo 8 Ley de Armas 10 años concurrente
DLA2000G0374 Artículo 6-A Ley de Armas 5 años concurrente
DLA2000G0375 Artículo 6-A Ley de Armas 5 años concurrente
DLA2000M0220 Artículo 6 Ley de Armas 5 años concurrente
DLA2000M0221 Artículo 6 Ley de Armas 5 años concurrente
DLA2000M0222 Artículo 6 Ley de Armas 5 años concurrente
DLA2000M0223 Artículo 6 Ley de Armas 5 años concurrente
DPD2000G0910 Artículo 173 Código Penal 99 años concurrente

**Hechos del 10 de enero de 2000**

DPD2000G0911 Artículo 173 Código Penal 99 años concurrente
DLA2000G0425 Artículo 8 Ley de Armas 10 años concurrente
DLA2000G0426 Artículo 8 Ley de Armas 10 años concurrente

Las sentencias impuestas por los delitos cometidos el 10 de enero de 2000 a ser cumplidas en forma concurrente entre sí, pero en forma consecutiva con las sentencias impuestas por los delitos cometidos el 19 de

Inconforme, el apelante recurrió oportunamente ante este Foro, señalando como único error:

*"ERRO EL JURADO AL NO ABSOLVER AL ACUSADO EN VIRTUD DE UNA PRUEBA QUE NO ESTABLECIO LA CULPABILIDAD DEL ACUSADO MAS ALLA DE DUDA RAZONABLE Y FUNDADA."*

Con el beneficio de los alegatos de ambas partes, la exposición narrativa estipulada de la prueba oral y los autos originales, resolvemos.

## II

En nuestra jurisdicción, *"[e]l precepto constitucional que garantiza al acusado la presunción de inocencia [Const. E.L.A., Art. II, §11] exige que toda convicción siempre esté sostenida por prueba que establezca más allá de duda razonable todos los elementos del delito y la conexión del acusado con los mismos".* *Pueblo v. Bigio Pastrana*, 116 D.P.R. 748, 760-61 (1985). Dicho precepto fue incorporado en la Regla 110 de las de Procedimiento Criminal, 35 L.P.R.A. Ap. II, R. 110, que en lo pertinente dispone que se presumirá inocente al acusado en todo proceso criminal, mientras no se probare lo contrario, y en caso de existir duda razonable acerca de su culpabilidad, se le absolverá. Viene así obligado el Ministerio Público no sólo a presentar prueba que conecte al acusado con la comisión del delito imputado, sino que la prueba tiene que contener un *quántum* más allá de duda razonable para que pueda ser constitucionalmente suficiente para sostener una convicción.

En cuanto a este último particular se ha establecido que el *quántum* de evidencia que la Constitución prevé para que se pueda sostener una convicción es aquél que establece una certeza moral capaz de convencer sobre la concurrencia de todos y cada uno de los elementos del delito imputado, así como la conexión del acusado con éstos. *Pueblo v. Narváez Narváez*, 122 D.P.R. 80 (1988); *Pueblo v. Carrasquillo Carrasquillo*, 102 D.P.R. 545, 552 (1974). Dicha prueba tiene que ser satisfactoria, es decir, que produzca certeza o convicción moral en una conciencia exenta de preocupaciones o en un ánimo no prevenido. *Pueblo v. Irizarry*, 156 D.P.R. ___, **2002 J.T.S. 68**; *Pueblo v. Rosaly Soto*, 128 D.P.R. 729, 739 (1991); *Pueblo v. Cabán Torres*, 117 D.P.R. 645, 652 (1986).

La insatisfacción o intranquilidad del juzgador con la prueba es lo que se conoce como duda razonable y fundada. *Pueblo v. Cabán Torres, supra*. Ahora bien, *"ello no significa que toda duda posible, especulativa o imaginaria tenga que ser destruida. Sólo se exige que la prueba establezca aquella certeza moral que convence, que dirige la inteligencia y que satisface la razón".* *Pueblo v. Pagán Ortiz*, 130 D.P.R. 470, 480 (1992). Respecto a la suficiencia de prueba, la Regla 10(C) de las de Evidencia, 32 L.P.R.A. Ap. IV, R. 10(C), dispone que *"[p]ara establecer un hecho no se exige aquel grado de prueba que, excluyendo posibilidad de error produzca absoluta certeza; sólo se exige la certeza o convicción moral en un ánimo no prevenido".* Conforme a ello, una parte descarga su responsabilidad de probar un hecho persuadiendo al juzgador de ánimo no prevenido o prejuiciado de que tal hecho ocurrió. *Pueblo v. Torres García*, 137 D.P.R. 56 (1994); *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 130-31 (1991).

Cónsono con lo anterior, la identificación del acusado es una de las etapas más esenciales o críticas en el procedimiento criminal, ya que no puede haber convicción sin prueba que relacione más allá de duda razonable a un imputado de delito como el responsable de los actos delictivos que se le imputan. *Pueblo v. Rodríguez Maysonet*, 119 D.P.R. 302, 309 (1987); *Pueblo v. De Jesús Rivera*, 113 D.P.R. 817, 821 (1987); *Pagán Hernández v. Alcaide*, 102 D.P.R. 101, 112 (1974); *Pueblo v. Gómez Incera*, 97 D.P.R. 249, 251 (1969). A esos efectos, el Tribunal Supremo reconoció que *"[n]o puede haber juicio justo e imparcial si no se garantiza debidamente la forma de identificar a la persona que se acusa de la comisión de un crimen".* *Id.*, pág. 252. Por lo tanto, adoptó la norma formulada por el Tribunal Supremo de los Estados Unidos en *United States v. Wade*, 388 U.S. 218 (1967); *Gilbert v. California*, 388 U.S. 263 (1967), y *Stovall v. Denno*, 388 U.S. 293 (1967), de que un

procedimiento innecesariamente sugestivo y conducente a una identificación errónea constituye una violación a la garantía constitucional al debido proceso de ley. *Id.* págs. 251-252.

De otra parte, aunque se favorece la utilización estricta de los mecanismos de identificación contemplados en la Regla 252 de Reglas de Procedimiento Criminal, la rueda de detenidos y la utilización de fotografías, Reglas 252.1 y 252.2, 34 L.P.R.A. Ap. II, R. 252.1 y R. 252.2, su omisión no derrota necesariamente el proceso. En estos casos debemos examinar la identificación extrajudicial, la judicial o ambas a la luz de la totalidad de las circunstancias para sostener la validez jurídica de la identificación. *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 127-128 (1991); *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 607 (1988).

En *Pueblo v. Torres Rivera*, 137 D.P.R. 631, 637 (1994), el Tribunal Supremo señaló que "*para determinar la validez de la identificación de un sospechoso deben dilucidarse dos cuestiones principales, a saber: (1) si dicha identificación ha sido confiable, y (2) si en el curso de ésta no hubo irregularidades que afectasen irremediablemente derechos sustanciales del acusado*". Reiteradamente, el Tribunal ha señalado que la validez de una identificación depende de la totalidad de las circunstancias que rodean el proceso de identificación, [*Mason v. Brathwrite*, 432 U.S. 98, 116 (1977)], y de los factores señalados en *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972). Esta norma fue adoptada en nuestra jurisdicción en *Pueblo v. Peterson Pietersz*, 107 D.P.R. 172 (1978). Expresó el Tribunal Supremo que los factores a evaluarse para determinar la confiabilidad de la identificación son:

*"1. la oportunidad que tuvo el testigo de observar al ofensor al tiempo en que se cometía el crimen;*

*2. el grado de atención del testigo;*

*3. la corrección de la descripción previa del crimen por el testigo;*

*4. el nivel de certeza demostrado por el testigo en la confrontación;*

*5. y el tiempo transcurrido entre el crimen y la confrontación.*" *Peterson Pietersz, supra*, a la pág. 183.

Por otro lado, es norma reiterada por nuestro Tribunal Supremo que la valoración de la prueba corresponde al foro primario y que, en revisión, los juzgadores de hechos merecen respeto y confiabilidad en la apreciación de la prueba. *Pueblo v. Rosario Cintrón*, 102 D.P.R. 82 (1974); *Pueblo v. Nevárez Virela*, 101 D.P.R. 11 (1973); *Pueblo v. Rodríguez Hernández*, 91 D.P.R. 183, 203 (1964). Por tanto, la determinación de culpabilidad que hace el juzgador de hechos a nivel de instancia es merecedora de gran deferencia por parte del tribunal apelativo, *Ortiz v. Cruz Pabón*, 103 D.P.R. 939 (1975), y no procede que intervengamos con las determinaciones de hechos y la adjudicación de credibilidad que haga el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Pueblo v. Pagán Santiago, supra*. Ausentes estos elementos, no hay razón para que este foro intervenga. *Pueblo v. Mendoza Lozada*, 120 D.P.R. 815, 820 (1988). Ello responde a que el juzgador de los hechos en el Tribunal de Primera Instancia oyó y vió declarar a los testigos, por lo que, de ordinario, está en mejor posición para aquilatar la prueba testifical. *Pueblo v. Chévere Herederia*, 139 D.P.R. 1 (1995); *Pueblo v. Cabán Torres, supra*.

Con tal deferencia, no obstante, no podemos significar que tales juzgadores no se equivoquen. De ahí que en muchos casos no se debe vacilar en dejar sin efecto un fallo condenatorio cuando un análisis de la prueba, que tuvo ante sí el tribunal sentenciador, deja serias dudas razonables y fundadas, respecto a la culpabilidad del acusado. *Pueblo v. Méndez Rolón, supra*; *Pueblo v. Rivera Arroyo*, 100 D.P.R. 46 (1971); *Pueblo v. Torres Rolón*, 99 D.P.R. 970 (1971); *Pueblo v. Carrasquillo Carrasquillo, supra*. Cuando ello ocurre, no se trata de una intervención con la función del juez o del jurado en la apreciación de la prueba, sino de un error de derecho. Así, en casos donde el apelante plantea como error que conlleva revocación una vulneración a la garantía

constitucional de la presunción de inocencia, simplemente se trata de si el contenido de la prueba aportada por el Ministerio Público hace surgir una duda razonable sobre la responsabilidad del acusado, lo que es revisable como cuestión de Derecho. *Pueblo v. Carrasquillo Carrasquillo*, supra; *Pueblo v. Cabán Torres*, supra; *Pueblo v. Rivero, Lugo y Almodóvar*, 121 D.P.R. 454 (1983); *Pueblo en interés menor F.S.C.*, 128 D.P.R. 931, 940 (1991).

III

De un examen integral de la prueba presentada ante el jurado surge que ésta es suficiente en derecho para establecer la culpabilidad del apelante más allá de duda razonable. La prueba de cargo no sólo estableció los elementos exigidos por nuestro ordenamiento para configurar los delitos imputados, sino que también conectó al apelante con la comisión de los mismos.

Para mayor certeza, se transcriben a continuación los testimonios de todos los testigos, según la exposición narrativa estipulada de la prueba oral:

**PRIMER TESTIGO DE CARGO: SR. MIGUEL LOIS REYES**

El señor Lois Reyes declaró:

*"Que su nombre es Miguel Lois Reyes, que trabaja para las empresas A. Cordero Badillo como comprador de tienda. Que es casado. Que para el 16 de diciembre de 1999 trabaja para la tienda Grande de Hato Tejas y era segundo gerente. Que para ese día se encontraba trabajando y llegó a las 5:00 a.m. a la tienda. Que reside en Carolina. Que a las 6:15 a.m., aproximadamente, se encontraba haciendo el arqueo o cuadre del dinero para dárselo a las cajeras correspondientes para empezar a trabajar. De momento se presentó el joven que está sentado. (Identificó al acusado). Se acercó al frente de él (señor Lois Reyes) que estaba en el "counter" y le pregunta que si estaba el gerente y le respondió que el gerente como tal no estaba. Entonces el acusado le dice "vamos". Sacó un arma de fuego de su cintura. El arma era una pistola niquelada. Le dijo el acusado "ábreme la puerta". Entra, le da con la pistola en la espalda y lo empuja. El testigo le dice que no le tiene que dar, que si lo que quiere es el dinero, que nos vamos a buscarlo. Inmediatamente, pasamos a la oficina donde está la caja por el lado de la compañera Ivette Morales que era la "head cashier" o encargada de la oficina. El acusado le dice a Ivette Morales que se quede quietesita ahí, que ni hable porque la iba a matar.*

*Entran a la oficina y el individuo le dice que consiga una bolsa y eche el dinero. Lois indica que no tenía bolsa, y el individuo al cual señaló como el acusado le dijo que echara el dinero en un "jacket" negro. El individuo chamboneó la pistola. Loiz echó el dinero, y el menudo lo echó en una bolsa de basura el mismo individuo y se lo dio a otro individuo trigueño con camisa hawayana que estaba frente al "counter". El acusado tenía una gorra de pelotero y un polo azul y mahones azules, el otro era trigueño también con gorra. Vio al acusado con un arma y otro tenía un arma que era blanco con punta. Logró ver tres personas asaltando. El individuo del "punk" cogió la bolsa plástica con dinero y se le rompió, se fueron.*

*El individuo salió y entró de nuevo y dijo que contaran hasta 80 porque si no, los voy a matar al salir, le pasó por el frente a un cliente y le preguntó "qué estás mirando" y le dio una gasnatá y se fue corriendo. Se llevó cerca de $15,000.00. Indicó que estuvo como a un pie de distancia del acusado y que el suceso se tardó como 6 minutos. Se llamó a la policía.*

*Que para el 10 de enero de 2000 estaba trabajando en Grande de Hato Tejas como segundo gerente como a las 7:15 am. Llama al gerente para quitar una decoración de navidad. La compañera Ivette Morales le dice que no han cuadrado la caja fuerte y el procede a cuadrarla. Entró una muchacha y pregunta por un señor Beltrán y le indicó que aquí no hay nadie con ese nombre. Ella sale de la tienda, inmediatamente entra el acusado a la tienda y yo le digo a mi compañero: nos chavamos, mira los panchos otra vez, los mismos panchos que entraron y nos asaltaron la otra vez". Que eran los mismos asaltantes. El individuo brincó por encima del "counter" y me*

*dijo vente dame los chavos. Le dice a mi compañero no te muevas. El individuo cogió un zafacón y empezó a hechar los chavos. Mientras hechaba el dinero, el acusado chambeaba la pistola y decía avanza, tienes cinco segundos, avanza. Le dijo que si no había más na'. Llenó el zafacón y le dijo ayúdame a subirlo, porque pesaba. El testigo se lo da al otro asaltante que tenía "jacket" azul, trigueño, bajito y gorra "surfer". Logró ver tres asaltantes. Vio un arma. El acusado le dio un empujón a un empleado que iba pasando y el testigo le dice no les des que es sordo. El acusado dijo "cuenta hasta ochenta y no se muevan, el que se mueva, lo mato".*

*Se llamó a la policía y a la compañía de seguridad de ellos. Estaba como a 1 ó 2 pies de distancia del acusado cuando le sacó el arma. Tiempo que duró los hechos alrededor de 6 minutos.*

*Luego del 10 de enero de 2000, ve al acusado el 21 de marzo de 2000 cuando fue arrestado."*

En ambos sucesos se entrevistó con policías y les dio la misma identificación que brindó declarando.

## SEGUNDO TESTIO DE CARGO: IVETTE MORALES JIMENEZ

*"La testigo Ivette Morales Jiménez declaró lo siguiente: Que para la fecha del 16 de diciembre de 1999, alrededor de las 6:00 de la mañana, ella se encontraba en la oficina del Supermercado Grande de Hato Tejas en Bayamón, cuando llegó un individuo de tez blanca, ojos claros, con gorra, pero se le notaba pelo claro, el cual se acerca a su compañero, Sr. Miguel Lois y le preguntó algo, pero no logró escuchar qué era. Acto seguido, siente que están abriendo la puerta de la oficina con llave, ella piensa que es Lois y cuando miró hacia la puerta, está entrando su compañero Lois, con el individuo de tez blanca que lo vio hablando y éste tiene un arma color plateada y apuntaba a Lois mientras decía "esto es un asalto", a ella le dice "no te muevas, ni me mires". Luego de eso, el individuo junto con su compañero entran a la oficina de cuadre, y mientras están allí adentro, escuchó que el individuo le dice a Lois "avanza, tiene cinco segundo, dame el dinero". En la parte de afuera ve a dos individuos más esperando, uno era bajito de tez oscura, con un arma en la mano. El asaltante le decía a Lois "dame todo, dame todo"; luego que Lois le da el dinero al asaltante, éste a su vez le da el dinero al individuo de tez oscura que estaba fuera de la oficina. El asaltante, antes de salir de la oficina, les dice que cuenten hasta ochenta y no los miren. Cuando los asaltantes se van, ve que se le rompe la bolsa de basura donde habían echado el dinero, salen y vuelven a entrar a la tienda. Se dio la querella a la policía y se hace un cuadre y la suma de lo que se llevaron ascendía a $14,000.00 dólares aproximadamente.*

*No supo más de los asaltantes hasta el día 10 de enero de 2000, que está trabajando en el Supermercado Grande, cuando a eso de las 7:10 a 7:15 de la mañana, que llega una muchacha de tez trigueña, pelo sobre los hombros de aproximadamente 5'3" de estatura que les pregunta si en la tienda se encontraba el señor Beltrán, empleado que trabajaba en el departamento de vegetales; se le indicó a esa persona que allí no trabajaba nadie con ese apellido. La muchacha sale de la tienda y a los pocos minutos entra un individuo de tez blanca, el cual reconoció inmediatamente como el mismo individuo que los había asaltado el 16 de diciembre de 1999, junto con un individuo de tez trigueña; yo me encontraba con Miguel Lois y cuando los ve le dice "mira quienes están ahí, los Panchos", refiriéndose al individuo de tez blanca y al trigueño. Como la puerta de la oficina donde ellos están está cerrada, el individuo de tez blanca brinca el "counter" y cae a la oficina donde nos encontramos Lois y ella y les indica "esto es un asalto", mientras la apuntaba con un arma plateada y le dice "no me mires, ni te muevas". Ahí entra nuevamente con su compañero a la oficina de cuadre y le indica a Lois que le de todo el dinero, que avance, luego vacía el zafacón de la basura al suelo y dentro de la bolsa echa el dinero que Lois le da, tenía un arma. Le indica que lo ayude a subir el zafacón por encima del "counter"; su compañero lo ayuda y se lo da al individuo de tez trigueña. Le dicen a su compañero que no miren, afuera había un compañero de trabajo, el señor Antonio, el cual se encontraba por las cajas registradoras y Lois le dice que él no los iba a escuchar porque era sordo. El individuo de tez blanca les indica que si salían afuera, los iba a matar; se quedaron dentro de la tienda hasta que los individuos se fueron. Luego de eso, se hizo la querella a la policía y se hizo el cuadre del dinero y la suma que se llevaron ascendió a la cantidad de $6,000.00."*

En ambos sucesos se entrevistó con policías y les dio la misma identificación que brindó declarando.

## TESTIGOS DE DEFENSA

Como prueba de defensa, declararon los policías, los cuales identificaron los informes que prepararon para el caso, los cuales fueron admitidos en evidencia.

## AGENTE ELIUD MOYA DIAZ

*"Declaró que es agente de la Policía de Puerto Rico adscrito a Bayamón Norte. Que preparó el informe de delito tipo I. Que ese informe tiene como propósito llevar estadística en la Policía y es un resumen de los hechos sobre los hechos del 10 de enero de 2000."*

## AGENTE JOSE MAYSONET FONSECA

*"Declaró que es agente de la Policía de Puerto Rico adscrito a Bayamón Norte. Que preparó el informe de delito tipo. Que ese informe tiene como propósito llevar estadística en la Policía y es un resumen de los hechos allá para el 16 de diciembre de 1999."*

## IV

El apelante basa su argumentación en torno a la confiabilidad de la identificación del acusado. Para ello analiza por separado los incidentes del 16 de diciembre de 1999 y 10 de enero de 2000, tomando como referencia los factores a evaluarse para determinar la confiabilidad de la identificación, expresados por el Tribunal Supremo en *Pueblo v. Peterson Pietersz, supra.*

En su argumentación utiliza ciertos detalles entre las declaraciones de los testigos y los informes de delito preparados uno por el Agente José Maysonet Fonseca en relación a los hechos de 16 de diciembre de 1999 y el otro por el Agente Eliud Moya Díaz en relación a los hechos de 10 de enero de 2000, para proyectar alegadas discrepancias de los testigos en cuanto a la identificación del acusado.

Dicho análisis es claramente defectuoso. No toma en consideración la espontaneidad de los testigos al reconocer al apelante tan pronto lo ven el 10 de enero de 2000 como el mismo que les había robado el 16 de diciembre de 2000. Además, pretende adjudicar a los informes de delito antes relacionados, que según declarado por los Agentes Maysonet y Moya se preparan con fines estadísticos y son resúmenes de los hechos, la misma categoría que a declaraciones juradas.

Consideramos inadecuado dividir la argumentación en los dos actos en que el apelante llevó a cabo su acción delictiva. A pesar de que se trata de dos fechas distintas, los protagonistas son los mismos. Cualquier duda sobre la identidad del asaltante a raíz de los hechos de 16 de diciembre de 1999, quedó disipada cuando inmediatamente fue reconocido por los testigos en el segundo asalto, el 10 de enero de 2000.

Contrario a lo alegado por el apelante de que ante lo rápido del primer asalto y la insistencia del asaltante de que no lo miraran, es lógico concluir que la oportunidad de observar de los testigos fue muy escasa, se puede afirmar que los testigos tuvieron amplia oportunidad de observar al apelante durante el primer asalto. No se puede afirmar categóricamente que el lapso de seis minutos sea tan extremadamente corto que no le permitiera a las víctimas una oportunidad razonable para observar al asaltante. Tampoco se puede asumir que el uso de una gorra le cubriera de tal forma la cabeza al asaltante que imposibilitara cualquier descripción posterior.

Tampoco era necesario presentar prueba sobre la iluminación del lugar de los hechos. Se trata de un supermercado, abierto al público, donde por razones obvias, la iluminación es sumamente necesaria. Lo mismo

puede afirmarse de la oficina del negocio donde ocurrió la mayor parte de la acción delictiva.

De igual forma carece de mérito la aseveración del apelante en el sentido de que la testigo Ivette Morales no pudo observar al asaltante debido a que reiteradamente éste le indicaba que no lo mirara. El hecho de que un asaltante insista en que no lo miren, no necesariamente implica que las víctimas no lo observaron.

En cuanto al grado de atención de los testigos, basta destacar lo expresado por el testigo Miguel Lois Reyes cuando el apelante por segunda ocasión asalta el negocio. Tan pronto se percata de los asaltantes, le dice a su compañero de trabajo: *"nos chavamos, mira los panchos otra vez, los mismo panchos que entraron y nos asaltaron la otra vez"*. El hecho de que lo reconocieron de inmediato es indicativo del grado de atención que el testigo observó durante el transcurso del primer acto delictivo.

Tampoco le asiste la razón al apelante al argumentar el tercer factor: fidelidad de la descripción. El hecho de que los testigos no expresaran en su testimonio ante el Tribunal de Primera Instancia que el asaltante era joven y delgado y de tez blanca, carece de la importancia que pretende impartirle el apelante, ya que el juzgador de los hechos puede apreciar si estas características se encuentran presentes o no.

De igual forma, las supuestas discrepancias que el apelante intenta resaltar entre las descripciones ofrecidas por los dos testigos se explican por la naturaleza e individualidad de cada persona. Lo que para una persona es más importante, puede no serlo para otra. Cada persona va a describir un hecho desde su punto de vista. Por eso, si dos personas presencian un incidente determinado, ambos van a relatar lo mismo, pero enfatizando diferentes detalles. Lo importante es que los relatos se complementen, como ocurre en el caso ante nuestra consideración.

El apelante descarta el factor del nivel de certeza alegando ausencia de información, olvidando así que el testigo Miguel Lois Reyes reconoció e identificó de inmediato al apelante cuando éste fue al negocio por segunda ocasión. Así lo declaró durante el proceso. Nuevamente, esta identificación espontánea es indicativa del nivel de certeza del testigo.

Tampoco procede alegar que el tiempo transcurrido entre el acto delictivo y la confrontación sea excesiva. El primer asalto ocurrió el 16 de diciembre de 1999, el segundo el 10 de enero de 2000 y el apelante es arrestado el 21 de marzo de 2000. Considerando el hecho de que el apelante fue identificado por el testigo Miguel Lois Reyes de forma inmediata en ocasión del segundo asalto, el tiempo transcurrido hasta el arresto pierde relevancia.

De igual forma, a los fines de apoyar su argumentación, el apelante pretende crear confusión en cuanto a la descripción ofrecida por los testigos tanto del apelante como de los demás asaltantes. Se olvida que la persona juzgada es él, por lo que la descripción de los demás, aunque importante, no puede considerarse como un factor decisivo al determinar su participación en los hechos delictivos por los cuales fue juzgado, máxime cuando su actuación fue central o decisiva. Debe recordarse que ambos testigos a quien tuvieron más cerca fue al apelante y en cuanto a su descripción no ha surgido discrepancia alguna; los demás asaltantes se mantuvieron fuera de la oficina.

Finalmente, debemos resaltar el hecho de que el apelante no impugnó la identificación hecha por los testigos el 21 de marzo de 2000, día de su arresto e identificación.

Atendidos los planteamientos de las partes y examinados los autos, debemos confirmar la validez de la identificación del apelante, por ser confiable y no existir irregularidades que afecten irremediablemente los derechos sustanciales del apelante. *Pueblo v. Torres Rivera, supra*. No se cometió el error señalado.

## V
Por los fundamentos antes expuestos, confirmamos las sentencias apeladas.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General