ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **EL PUEBLO DE PUERTO RICO**<br><br>Apelado<br><br>v.<br><br>**DAVID J. RODRÍGUEZ HERNÁNDEZ**<br><br>Apelante | KLAN202400415 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Caguas**<br><br>Crim. Núm.:<br>**E LE2022G0217**<br><br>Sobre: Art. 7.06 de la Ley Núm. 22-2000 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de octubre de 2024.

Comparece ante nos David Jovanny Rodríguez Hernández (Rodríguez Hernández o apelante), y solicita la revisión de la *Sentencia* dictada en su contra el 27 de febrero de 2024, por el Tribunal de Primera Instancia, Sala Superior de Caguas (TPI). A través de esta, se le impuso una pena de 15 años de cárcel, por violación al Artículo 7.06 de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22 de 2000, según enmendada, 9 LPRA sec. 5206, y seis (6) meses de cárcel por infracción al Art. 4(i) de la *Ley de Seguro de Responsabilidad Obligatorio para Vehículos de Motor*, Ley Núm. 253-1995, 26 LPRA sec. 8053, las cuales se cumplirán de manera concurrentes entre sí.

Por los fundamentos que adelante esbozamos, confirmamos la sentencia apelada.

**I.**

Por hechos ocurridos el 20 de agosto de 2021, el Ministerio Público presentó tres (3) acusaciones contra Rodríguez Hernández por infracción a los Artículos 7.06 y 5.07(C) de la Ley Núm. 22-2000,

así como al Art. 4(i) de la Ley Núm. 253-1995. En específico, las acusaciones indicaban lo siguiente:

**Acusación por infracción al Artículo 7.06 de la Ley Núm. 22-2000:**

El referido acusado, DAVID J. RODRÍGUEZ HERNÁNDEZ, allá en o para el día 20 de agosto de 2021 y en la carretera #1 km 45.8, Caguas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, ilegal, voluntaria y criminalmente, mientras conducía el vehículo marca Toyota, modelo Yaris, año 2017, color gris, tablilla IWN-020 por la carretera #1 km 45.8, jurisdicción de Caguas, lo hacía bajo los efectos de bebidas embriagantes y ocasionándole la muerte a un ser humano. Consistente en que el imputado al llegar al kilómetro 45.8, invade el carril contrario impactando con su parte frontal la parte frontal lado izquierdo al vehículo marca Toyota, Corolla, año 1993, color Champagne, tablilla BQF-278, conducido por la Sra. Marie Angelis Franco Rodríguez, quien estaba en estado de gestación (nueve meses). La perjudicada fue llevada al Hospital Menonita de Cayey, en estado grave y posteriormente el 24 de agosto de 2021, fallece. El imputado arrojó 147% de alcohol en su organismo, utilizando la máquina Intoxilyzer 9000, tarjeta 002409. Hecho contrario a la ley.

**Acusación por infracción al Artículo 5.07(C) de la Ley Núm. 22-2000:**

El referido acusado, DAVID J. RODRÍGUEZ HERNÁNDEZ, allá en o para el día 20 de agosto de 2021 y en la carretera #1 km 45.8, Caguas, Puerto Rico, que forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, de forma temeraria y con claro menosprecio a la seguridad, conducía el vehículo de motor marca Toyota, modelo Yaris, año 2017, color gris, tablilla IWN-020, ocasionándole la muerte a otra persona en violación a las disposiciones de la Ley de Vehículos y Tránsito, Ley 22. Consistente en que el imputado mientras conducía el vehículo Toyota, Yaris, por la carretera #1 km 45.8, jurisdicción de Caguas, al llegar al kilómetro 45.8, invade el carril contrario impactando con su parte frontal la parte frontal lado izquierdo al vehículo marca Toyota, Corolla, año 1993, color Champagne, tablilla BQF-278, conducido por la Sra. Marie Angelis Franco Rodríguez, quien estaba en estado de gestación (nueve meses). La perjudicada fue llevada al Hospital Menonita de Cayey, en estado grave y posteriormente el 24 de agosto de 2021, fallece. Hecho contrario a la ley.

**Acusación por infracción al Artículo 4(i) de la Ley Núm. 253-1995:**

El referido acusado, DAVID J. RODRÍGUEZ HERNÁNDEZ, allá en o para el día 20 de agosto de 2021 y en la carretera #1 km 45.8, Caguas, Puerto Rico, que

forma parte de la jurisdicción del Tribunal de Primera Instancia, Sala de Caguas, ilegal, voluntaria, maliciosa, a sabiendas y con la intención criminal, mientras conducía el vehículo de motor marca Toyota, modelo Yaris, año 2017, color gris, tablilla IWN-020, por la carretera #1 km 45.8, jurisdicción de Caguas, la cual es una vía pública de Puerto Rico, sin haber pagado los derechos anuales ni el seguro de responsabilidad obligatorio, violando de esta forma una ley que lo prohíbe. Hecho contrario a la ley.

Luego de múltiples trámites, el juicio en su fondo se celebró por tribunal de derecho los días 15 de noviembre de 2023, 10 y 22 de enero y 27 de febrero de 2024.

La prueba documental del caso constó de lo siguiente:

**Exhibit 1(A) al 1(E):** Fotografías a color tamaño 8 ½ x 11 (5 fotos).

**Exhibit 2(A) al 2(D):** Fotografías a color tamaño 8 ½ x 11 (4 fotos).

**Exhibit 3:** Certificación del Departamento de Salud donde certifica que el Agte. Joel González González, Placa 36176 está cualificado para la operación de instrumentos: Intoxilyzer 9000 y Alco-Sensor (1 folio).

**Exhibit 4:** PPR-109.5 Informe sobre prueba de alcohol por aliento con los pasos operacionales y copia de la tarjeta del resultado #002409 (2 folios).

**Exhibit 5:** PPR-615.4 Advertencias Miranda para persona sospechosa en custodia del 20 de agosto de 2021 (1 folio).

**Exhibit 6:** PPR-615.6 Advertencias a persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas del 20 de agosto de 2021 (1 folio).

**Exhibit 7:** PPR-621.4 Informe de choque de tránsito (12 folios).

**Exhibit 8:** Informe escena choque grave o fatal caso núm. 2021-6-199-001528 (12 folios).

**Exhibit 9:** Inspección del vehículo #00211558 del Toyota modelo Yaris 2017 tablilla IWN-020 conducido por el Sr. David Jovannie Rodríguez Hernández.

**Exhibit 10:** Inspección del vehículo #0021596 del Toyota Corolla año 1993 tablilla BQF-278 conducido por la occisa, Marie Angeliz Franco Rodríguez.

**Exhibit 11:** Copia Laboratorio Toxicología Forense de Alcohol Verificación de Calibración de Instrumentos para Medir Concentración de Alcohol en la Sangra a Través del Aliento, 21/julio/2021.

**Exhibit 12:** Copia Laboratorio Toxicología Forense de Alcohol Verificación de Calibración de Instrumentos para medir concentración de alcohol en la sangre a través del aliento, 24/agosto /2021.

**Exhibit 13:** Copia Laboratorio Toxicología Forense de Alcohol Verificación de Calibración de Instrumentos para medir concentración de alcohol en la sangre a través del aliento, 3/septiembre/2021.

**Exhibit 14:** Copia Certificación de Solución mes de agosto de 2021.

**Exhibit 15:** Copia Mantenimiento y Verificación del Intoxilyzer 9000 7/29/2021.

**Exhibit 16:** Copia Mantenimiento y Verificación del Intoxilyzer 9000 8/26/2021.

**Exhibit 17:** Copia Mantenimiento y Verificación del Intoxilyzer 9000 9/3/2021.

**Exhibit 18:** Informe Médico Forense

La prueba de cargo presentada por el Ministerio Público durante el juicio consistió en los testimonios de la señora Juanita Maldonado, madre de la occisa; el señor Héctor Luis Rodríguez López, viudo de la occisa; el agente Joel José González González y la señora Edda L. Rodríguez Morales, patóloga forense.

Para un mejor entendimiento de los eventos suscitados ante el TPI, procedemos a realizar un resumen de los testimonios vertidos en el juicio en su fondo.

Héctor Luis Rodríguez López

Relató que era esposo de la víctima Marie Angelis Franco Rodríguez y que ésta tenía nueve (9) meses de embarazo al momento del accidente. Enunció que la noche de los hechos iba de pasajero en el vehículo Toyota Corolla de 1993 que conducía su esposa como a 15 o 20 millas por hora y que su hija de ocho (8) años iba en la parte trasera del automóvil. Subrayó que iban de camino a buscar su camión porque él era chofer. Añadió que la carretera por donde transcurrían era con curvas y que el clima estaba normal, no estaba lloviendo. Precisó que iban bajando por el carril derecho y Rodríguez Hernández iba subiendo por el carril izquierdo cuando éste invadió

su carril. Expuso que estaba recostado en su asiento e iba a intentar dormir, pero no pudo. Relató que de momento su esposa le tocó los brazos rápido y ahí vio la luz cuando chocaron el carro y se chocó la cabeza. Enunció que recibieron el impacto por el lado del chofer.[1] Expresó que Rodríguez Hernández era quien conducía el vehículo que les chocó su auto y que este conducía un Toyota Yaris. Manifestó que hubo que picar el carro para sacar a su esposa porque quedó pillada tras el impacto y que el rescate duró más o menos como una hora. Destacó que cuando iban de camino al hospital en la ambulancia verificaron si el bebé tenía latidos del corazón, pero no fue así. Contó como su esposa dio a luz, pero el bebé estaba morado, luego a su esposa la llevaron a un cuarto en intensivo y estaba hinchada. Formuló que su hijo murió el 20 de agosto de 2021 y su esposa falleció el 24 de agosto de 2021.[2]

Juanita Maldonado

Apuntó que era la madre de Marie Angelis y que la noche de los hechos su hermana le avisó lo sucedido, por lo que rápido llegó al lugar del accidente que era en Caguas, por la [carretera] vieja. Declaró que al llegar a la escena vio el carro de su hija "esbaratao" y ésta tenía mucha sangre en la boca y la barriga "de lao". Apuntaló que en el hospital su hija estaba sangrando mucho y que le removieron la matriz, pero aun el sangrado continuaba. Precisó que luego la entubaron y posteriormente el personal médico le comunicó que su hija sufrió muerte cerebral.[3]

Agente Joel José González González

El agente González González declaró que para la fecha de los hechos pertenecía a la División de Patrulla de Carreteras y Autopistas de la Policía de Puerto Rico. Precisó que tenía un turno

---

[1] Transcripción de la Prueba Oral (TPO), págs. 17,18, 24, 28, 37, 55.
[2] TPO, págs. 9, 32.
[3] *Íd.*, págs. 66-74.

de 8:00 pm a 4:00 am y se le asignó un patrullaje preventivo por el área de Caguas. Relató que llegó al lugar del accidente y percibió dos (2) vehículos involucrados, y que el Toyota "viejito" tenía un impacto por la parte frontal izquierda, área del conductor. Especificó que dentro del automóvil distinguió a una joven que se encontraba atrapada y que tenía un golpe en la boca. Indicó que también pudo apreciar un vehículo Toyota Yaris con un impacto por la parte frontal izquierda, por el área del conductor. Destacó que el lugar de accidente era una curva y que había iluminación de unos focos en aquel momento. En relación con los eventos contra Rodríguez Hernández, narró que el vehículo Toyota Yaris tenía un marbete expirado. También atestó que Rodríguez Hernández tenía características de una persona que podía estar bajo los efectos de bebidas embriagantes porque tenía los ojos rojos, un poco de pesadez al hablar y fuerte olor a alcohol en el aliento, por lo cual le leyó las advertencias de ley "Miranda" y lo puso bajo arresto.[4] Explicó que Rodríguez Hernández se mantuvo tranquilo y acató las instrucciones. Lo mantuvo en observación por 20 minutos para que eliminara, de tener, algún alcohol residual en el área de la boca. Además, expuso que, de acuerdo con su investigación, el vehículo que conducía la occisa transitaba en dirección de sur a norte, mientras que el de Rodríguez Hernández venía de norte a sur. Añadió que la prueba de alcohol arrojó .147 por ciento. Atestó que confeccionó un informe estadístico de arresto, relacionado a la embriaguez y uno de accidente. Testificó que de su investigación surge que Rodríguez Hernández invadió el carril contrario e impactó con la parte frontal izquierda del conductor a la parte frontal izquierda del vehículo Toyota Corolla que conducía la occisa.[5]

---

[4] *Íd.*, págs. 85-89, 94.
[5] TPO, págs. 93, 100, 103, 105, 107, 149.

Asimismo, el agente narró que en un principio se investigó el accidente como uno leve porque solo se pudo apreciar el golpe en el área de la boca de la occisa. Añadió que trascendió que la perjudicada sufrió un golpe en la barriga y que al visitarla al Hospital su condición era estable y que el feto había fallecido. Manifestó que el caso se convirtió en una investigación de accidente grave o fatal cuando le informaron que Marie Angelis pereció. Realzó que tras visitar el lugar del accidente concluyó que el vehículo de la occisa fue el que recibió mayor impacto.[6]

Edda L. Rodríguez Morales (perito)

Atestó que era patóloga forense en el Instituto de Ciencias Forenses con 24 años de experiencia. Indicó que sus funciones incluyen determinar causas de muertes violentas, sospechosas e inesperadas. Expuso que realizó la autopsia de Marie Angelis el 29 de agosto de 2021 y preparó un informe forense.[7]

La testigo contó que el cuerpo de la occisa presentaba abrasiones y contusiones en diferentes partes. Precisó que ésta había sido operada, le removieron el útero, los ovarios y las trompas de falopio. También presentaba edema cerebral severa, sangrado en la cabeza y sangrado vesicular en el abdomen. Mencionó que la joven estaba embarazada y tuvo un accidente tránsito, por lo que la placenta se desprendió del útero. Testificó que hubo un sangrado profuso que provocó que falleciera el feto intrauterinamente. Añadió que realizó la autopsia de Marie Angelis, luego que esta falleciera posteriormente por muerte cerebral. Acentuó que el término para el desprendimiento de la placenta es "placenta abrupta" o *abruption placentae*" y que es una complicación poco común del embarazo.[8] Precisó que la causa de muerte fue por placenta abrupta que fue

---

[6] Íd., págs. 118-121, 154.
[7] TPO, págs. 161,163-165.
[8] Íd., págs. 168-169.

provocada a su vez por el trauma sufrido. Acentuó que las causas principales de una placenta abrupta son: (1) trauma al abdomen o daño al abdomen, como se ve en los accidentes de tránsito y las caídas y (2) pérdida rápida y repentina de líquido amniótico, lo cual produce un sangrado masivo. Definió que es una condición de alto riesgo porque una vez se desprende la placenta ocurre interrupción del flujo sanguíneo entre el útero y el bebé, lo cual impide que el feto tenga el suplido de oxígeno suficiente y le provoca la muerte. Acentuó que la causa principal de muerte de Marie Angelis fue muerte cerebral y que la placenta abrupta lo produjo el trauma que recibió en el accidente. Narró que la muerte cerebral lo provocó el sangrado masivo interno que ocasionó un desbalance metabólico corporal, produjo el fallo respiratorio, un edema cerebral. Aceptó que desconocía como o con qué intervino otro médico con Marie Angelis, por lo que no conocía si la causa del accidente fue la razón principal por la cual no se pudo salvar la pérdida de sangre durante el proceso de intervención del ginecólogo. Estableció que la placenta abrupta no la pudo haber ocasionado una mala práctica del médico que intervino con Marie Angelis porque las causas más comunes de esta complicación son trauma al abdomen y pérdida rápida del líquido amniótico. Opinó que, si esta complicación no ocurre durante los primeros meses de embarazo, por algún problema que tenga la madre para formar el ambiente adecuado para desarrollar al bebé, no va a ocurrir posteriormente, a menos que hubiera un trauma al abdomen o que pierda el líquido amniótico rápidamente. Apuntaló que no necesariamente siempre la pérdida del líquido amniótico o la placenta abrupta es a causa de trauma porque existen condiciones médicas como la pérdida de líquido amniótico por la ruptura temprana de membrana. Atestó que si Marie Angelis no hubiera tenido el accidente de tránsito no tenía por qué haber tenido una placenta abrupta. Insistió que su conclusión sobre que la causa de

la ruptura de la placenta y muerte cerebral fue un trauma corporal por un accidente de automóvil se basó en los hallazgos de la autopsia, información ofrecida por los familiares e información ofrecida por el hospital.[9]

Luego de aquilatar la prueba documental y testifical, el tribunal *a quo* determinó que Rodríguez Hernández era culpable de las infracciones al Art. 43 de la Ley Núm. 253-1995 y al Art. 7.06 de la Ley Núm. 22-2000. En relación con el Art. 5.07 de la Ley Núm. 22-2000, la juzgadora de los hechos declaró a Rodríguez Hernández no culpable.

En consecuencia, el 27 de febrero de 2024, el TPI dictó la *Sentencia* apelada. En desacuerdo, Rodríguez Hernández solicitó reconsideración, sin éxito.

Aun insatisfecho con la determinación del TPI, Rodríguez Hernández acude ante nos y señala que dicho foro cometió los siguientes errores:

> PRIMER SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al encontrar culpable al Apelante por infracción al Artículo 7.06 de la Ley Núm. 22-2000, a pesar de que el Ministerio Público no demostró el nexo causal entre el elemento de estar bajo los efectos de bebidas embriagantes y la muerte de la occisa.

> SEGUNDO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad, existiendo duda razonable, demostrada en juicio, sobre la causa de muerte de la occisa.

> TERCER SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad existiendo duda sobre la causa del accidente.

> CUARTO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad ante la ausencia total de prueba sobre el nexo causal entre el accidente y la muerte de la occisa.

> QUINTO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar

---

[9] Íd., págs. 167-171, 182,184-186, 191-193.

sentencia de culpabilidad aun cuando no se desfiló prueba en juicio sobre la conexión entre el alegado estado de embriaguez del acusado y el accidente.

SEXTO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad aun cuando no se desfiló prueba en juicio sobre la conexión entre el alegado estado de embriaguez del acusado y la muerte de la occisa.

SÉPTIMO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad existiendo duda razonable, demostrada en juicio, sobre si la occisa provocó el accidente al invadir el carril del acusado.

OCTAVO SENALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad sobre el Art 7.06 de la Ley 22-2000, sin que mediara evidencia alguna tendiente a demostrar que por estar en estado de embriaguez se cometió la imprudencia crasa que conllevó a la muerte de la occisa.

NOVENO SENALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad por un accidente sobre el cual el acusado no tuvo control ni responsabilidad alguna.

DÉCIMO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al dictar sentencia de culpabilidad existiendo duda razonable sobre si hubo o no causa interventora que provocara la muerte de la occisa luego del accidente.

UNDÉCIMO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al brindarle un peso sustancial al testimonio del agente investigador, quien no pudo establecer los elementos del delito más allá de duda razonable.

DUODÉCIMO SEÑALAMIENTO DE ERROR: Erró el Honorable Tribunal de Primera Instancia al determinar que el Apelante no cualifica para penas alternativas.

El 25 de septiembre de 2024, el Pueblo de Puerto Rico, por conducto de la Oficina del Procurador General, presentó su alegato. Con el beneficio de los autos originales del caso, la transcripción de la prueba oral con una exposición narrativa adicional y la comparecencia de todas las partes, resolvemos.

**II.**

**A.**

Como cuestión de umbral debemos repasar la norma relacionada al *quantum* y peso de la prueba en los casos criminales y aquella referente a nuestra capacidad revisora de los dictámenes de las causas penales.

Como sabemos, a todo acusado se le presume inocente hasta que su culpabilidad sea probada más allá de duda razonable.[10] Véase, Art. II, Sec. 11, Const. ELA, LPRA, Tomo 1. Por lo tanto, para derrotar esta presunción, el Ministerio Público deberá presentar prueba sobre todos los elementos del delito y su conexión con el acusado, así como la intención o negligencia criminal. *Pueblo v. Resto Laureano*, 206 DPR 963, 967 (2021); *Pueblo v. Henríquez, Urbáez*, 205 DPR 311, 323-324 (2020); *Pueblo v. Acevedo Estrada*, 150 DPR 84, 99 (2000). Por tanto, la carencia de prueba sobre alguno de los elementos del delito implicaría el incumplimiento por parte del Estado con su carga probatoria y supondría la absolución del acusado respecto al delito imputado. *Pueblo v. Negrón Ramírez*, 2024 TSPR 41, resuelto el 23 de abril de 2024, 213 DPR ___ (2024).

Sin embargo, la prueba presentada no supone la necesidad u obligación de probar la comisión del delito con certidumbre matemática. *Pueblo v. Toro Martínez*, 200 DPR 834, 856 (2018). La misma deberá ser aquella que produzca certeza o convicción moral en una conciencia exenta de preocupación o en un ánimo no prevenido. *Pueblo v. Irizarry*, 156 DPR 780, 787 (2002). Véase, además, *Pueblo v. Acevedo Estrada*, supra; *Pueblo v. Rodríguez Román*, 128 DPR 121, 131 (1991). Además, nuestro Tribunal Supremo en repetidas ocasiones ha puntualizado que la evidencia

---

[10] Recordemos que la duda razonable es aquella insatisfacción de la conciencia del juzgador de los hechos una vez desfilada la totalidad de la prueba. *Pueblo v. González Román*, 138 DPR 691, 707 (1995), *Pueblo v. Torres Rivera*, 129 DPR 331, 341 (1991).

directa de un testigo que le merezca credibilidad puede ser suficiente para establecer un hecho. *Pueblo v. Chévere Heredia*, 139 DPR 1, 15 (1995); Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110. Lo anterior, aun cuando el testimonio no sea "perfecto", toda vez que es al juzgador de los hechos a quien le corresponde resolver la credibilidad de un testigo cuando haya partes de su testimonio que no sean aceptables. *Pueblo v. Chévere Heredia*, supra, pág. 16.

De otra parte, la apreciación de la prueba corresponde al foro sentenciador y los tribunales apelativos sólo intervendremos con ella cuando exista error manifiesto, pasión, prejuicio o parcialidad.[11] *Pueblo v. Negrón Ramírez,* supra*,* citando a *Pueblo v. Hernández Doble,* 210 DPR 850, 864 (2022); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 373 (2020); *Pueblo v. Viruet Camacho*, 173 DPR 563, 584 (2008); *Pueblo v. Acevedo Estrada*, supra. Lo anterior cobra mayor vigencia cuando se trata de la prueba testifical desfilada en el juicio. *Pueblo v. Negrón Ramírez*, supra. Ello es así, debido a que son los foros de instancia los que se encuentran en mejor posición para aquilatar la prueba desfilada pues, son ellos los que tienen la oportunidad de observar y escuchar a los testigos. *Pueblo v. Acevedo Estrada,* supra; *Pueblo v. Rosario Reyes,* 138 DPR 591, 599 (1995).[12]

Por tanto, a menos que existan las situaciones antes señaladas o que la apreciación de la prueba no encuentre cabida en la realidad fáctica, sea inherentemente imposible o increíble, este Tribunal de Apelaciones se abstendrá de intervenir con dicho ejercicio. *Pueblo v. Acevedo Estrada*, supra. Ahora bien, los foros

---

[11] El Tribunal Supremo de Puerto Rico define el concepto de "pasión, prejuicio y parcialidad" como aquellas inclinaciones personales de tal intensidad que llevan a un juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio. *Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759, 779 (2022) y otros (citas omitidas).
[12] Como excepción a este principio de deferencia, en cuanto a la apreciación de la prueba documental que se haya presentado en un juicio, los foros apelativos estamos en las mismas condiciones que el tribunal de instancia para intervenir y apreciar *de novo* dicha prueba. *Díaz García v. Aponte Aponte*, 125 DPR 1, 13 (1989).

apelativos pueden intervenir con tal apreciación cuando de una evaluación minuciosa surjan "serias dudas, razonables y fundadas, sobre la culpabilidad del acusado". *Pueblo v. Casillas Díaz*, 190 DPR 398 (2014), citando a *Pueblo v. Santiago*, 176 DPR 133, 148 (2009).

Un tribunal apelativo también podrá intervenir con las determinaciones de hechos y apreciación de la prueba que realice el juzgador de primera instancia si se demuestra que éste incurrió en un abuso de discreción al apreciar y adjudicar la prueba presentada ante sí. *Pueblo v. Negrón Ramírez,* supra*,* citando a *Pueblo v. Rivera Montalvo,* supra. En armonía con lo anterior, "un tribunal apelativo incurre también en abuso de discreción si sustituye el criterio de apreciación de la prueba realizado por el juzgador de hechos en el foro de instancia, o las determinaciones de hechos realizadas por éste, sin haber mediado prejuicio, parcialidad, pasión o error manifiesto". *Pueblo v. Negrón Ramírez,* supra.

**B.**

En nuestro ordenamiento jurídico existe una política pública de que el manejo de vehículos en las vías públicas bajo los efectos de bebidas embriagantes, drogas o sustancias controladas constituye una amenaza de primer orden a la seguridad de la población. Art. 7.01 de la Ley Núm. 22-2000, según enmendada, 9 LPRA sec. 5201. Asimismo, la referida Ley establece que "será ilegal y constituirá delito menos grave que será sancionado de conformidad con las penas dispuestas en la sec. 5204 de este título el que cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas conduzca o haga funcionar cualquier vehículo, vehículo de motor, o vehículo todo terreno." *Íd.*

En lo pertinente al caso de autos, el Art. 7.06 de la Ley Núm. 22-2000, 9 LPRA sec. 5206, establece lo siguiente:

[…]

Si a consecuencia de la violación a lo dispuesto en las secs. 5201, 5202 o 5203 de este título, **un conductor le ocasiona la muerte a otra persona, incurrirá en delito grave y se le impondrá una pena de reclusión por un término fijo de quince (15) años**.

En consonancia con lo anterior, el Art. 7.07 de la aludida Ley dispone que:

En todos los casos en que una persona resulte convicta por infracción a las disposiciones de las secs. 5201, 5202, 5203, 5205 y 5206 de este título, sea por alegación de culpabilidad o luego de evaluada la prueba durante un juicio, el tribunal deberá dictar sentencia e imponer la sanción aplicable bajo este capítulo. 9 LPRA sec. 5207.[13]

Cabe destacar que el tribunal no podrá suspender los efectos de la sentencia de reclusión impuesta bajo este subcapítulo en una convicción por infracción al Art. 7.06 de esta Ley. 9 LPRA sec. 5208.

**III.**

Por estar intrínsecamente relacionados, discutiremos todos los señalamientos de error levantados por el apelante de forma conjunta.

En la presente causa, el apelante fue hallado culpable de ocasionar la muerte de Marie Angelis al manejar un automóvil con una cantidad de alcohol en la sangre mayor al 0.08%, concretamente, 0.147%. El foro primario le impuso una pena de 15 años y seis (6) meses, según dispone la Ley Núm. 22-2000. No obstante, este no está de acuerdo con dicha determinación. Esencialmente alega que la prueba desfilada por el Ministerio Público no logró probar, más allá de duda razonable, que: (1) este era responsable del accidente; (2) el porcentaje de alcohol en la sangre fuera la causa próxima del accidente, (3) el accidente fuera la causa próxima del fallecimiento de Marie Angelis y (4) no hubo causa interventora que provocara la muerte de Marie Angelis.

---

[13] Con relación al principio de especialidad vigente en nuestro ordenamiento jurídico, véase *Pueblo v. Plaza Plaza*, 199 DPR 276, 286 (2017).

Además, el apelante arguye que la prueba presentada en su contra carece de la mejor evidencia. Al respecto, esboza que el señor Rodríguez López no tenía conocimiento personal de los hechos, a pesar de que estaba dentro del vehículo que manejaba su esposa, porque declaró en algún momento que iba con los ojos cerrados. Por ende, aduce que este testigo no pudo observar los eventos que dieron paso al lamentable accidente. Además, precisa que el señor Rodríguez López se contradijo durante su testimonio cuando se le cuestionó si iba dormido o no durante el trayecto.

Con relación al testimonio del agente González González, el apelante argumenta que éste arroja dudas sobre la causa próxima de la muerte de Marie Angelis y que su informe se basó en inferencias. En específico, arguye que la investigación del agente fue deficiente y que lo único que se desprende de la misma es que, como resultado del accidente, todos los involucrados estaban en condición estable, por lo que este fue catalogado como uno leve. En esa dirección, el apelante es enfático en alegar que la muerte de Marie Angelis, cuatro (4) días después del accidente vehicular, se suscitó con intervención de varios factores adicionales sobre los cuales el Ministerio Público no desfiló prueba. Menciona que la investigación del accidente no tuvo el beneficio de un perito de reconstrucción de escenas que pudiera haber determinado con mayor certeza los eventos que desencadenaron el accidente. Por ende, el apelante razona que el testimonio del agente González González no establece, más allá de duda razonable, que él provocó el accidente, ni que el accidente fue el resultado de que manejara bajo los efectos de bebidas embriagantes.

Por otra parte, el apelante aduce que hubo ausencia de causalidad y que el Ministerio Público evadió presentar prueba sobre el tratamiento médico brindado a Marie Angelis entre la ocurrencia del accidente y el momento de su fallecimiento. Añade que existen

lagunas en cuanto a la causa próxima de la muerte y que el testimonio de la patóloga Rodríguez Morales también arroja dudas sobre si el accidente fue la causa de muerte de Marie Angelis. Esgrime que la patóloga basó sus inferencias en informes médicos anteriores, pero no pudo descartar otras causas de muerte u otras causas que provocaran la placenta abrupta. Particulariza que las limitaciones que tuvo el testimonio de la patóloga forense, en virtud de las Reglas de Evidencia, impidieron que ésta pudiera testificar sobre las condiciones de la occisa desde su llegada al hospital hasta su eventual muerte.

Tras un examen detallado y desapasionado del expediente, concluimos que los argumentos del apelante no nos convencen. Por consiguiente, la sentencia en cuestión debe ser confirmada. Veamos.

En primer orden, es preciso establecer que en el caso de referencia no está en controversia el hecho de que el apelante manejaba su vehículo de motor bajo los efectos de bebidas embriagantes. De hecho, ante el TPI y en el escrito ante nos este acepta dicho asunto, más entiende que fue un error haberlo hallado culpable de ocasionar la muerte de Marie Angelis. En esa dirección, pretende que revoquemos la sentencia impuesta en su contra, bajo el fundamento de que el TPI se equivocó en su apreciación de la prueba.

En relación con el argumento de ausencia de causalidad levantado por el apelante, colegimos que este es inmeritorio. Según reseñado, la patóloga forense Rodríguez Morales, quien practicó la autopsia de Marie Angelis, concluyó que la causa de muerte fue una muerte cerebral por placenta abrupta provocada a su vez por el trauma sufrido durante el accidente de tránsito. La perjudicada tuvo que ser intervenida quirúrgicamente por sangrado excesivo como consecuencia del golpe recibido en el choque. Así las cosas, a la luz de los hechos particulares del caso, unido al testimonio de la

patóloga forense y la jurisprudencia aplicable, es claro que, aunque Marie Angelis tuvo muerte cerebral por el sangrado masivo interno que ocasionó un desbalance metabólico corporal, produjo un fallo respiratorio y un edema cerebral a raíz del desprendimiento de la placenta, el evento que desencadenó los sucesos que culminaron con su fallecimiento fueron los golpes recibidos por el impacto a su vehículo por parte del automóvil del apelante, quien manejaba bajo los efectos del alcohol.

En armonía con lo anterior, somos del criterio que los argumentos especulativos mencionados por el apelante dirigidos a establecer que una posible complicación sufrida por la perjudicada durante la intervención médica en el hospital fue su causa de muerte, aun si fueran ciertos, en este caso "no constituye un suceso lo suficientemente extraño a la conducta delictiva que permita definirlo como causa interviniente." Véase, *Pueblo v. Santiago Cedeño*, 106 DPR 663, 668 (1978) y *Pueblo v. Gonzalez Ruiz*, 90 DPR 580, 583-585 (1964).  Es decir, el hecho de que la causa inmediata de la muerte de Marie Angelis fue categorizada como muerte cerebral, ello no releva de responsabilidad criminal al apelante.

Además, durante el juicio en su fondo se desfiló evidencia directa contra el apelante. El testimonio del señor Rodríguez López, esposo de la occisa, fue preciso y contundente al exponer que Marie Angelis venía manejando su auto por la carretera cuando el apelante invadió su carril. Resulta evidente que los demás testimonios vertidos por la patóloga forense y el agente investigador González González corroboraron lo manifestado por el esposo de la víctima. De los hechos en la causa de epígrafe quedó demostrado que el apelante fue el responsable de invadir el carril contrario y ocasionar el accidente de tránsito que causó la eventual muerte de Marie Angelis. Colegimos que la prueba presentada por el Ministerio Público probó, más allá de duda razonable, todos los elementos de

los delitos imputados, así como la conexión del apelante con los delitos concernidos. La prueba vertida fue robusta, convincente y suficiente en derecho, la cual, además, carece de cualquier contradicción sobre los hechos esenciales.

Es importante resaltar que, aun si los testimonios tuvieran cierto grado de imprecisión, ello es un asunto de credibilidad que le corresponde al juzgador de los hechos analizarlo y determinar el valor probatorio de cada uno de los testimonios presentados en el juicio. *Pueblo v. Cabán Torres*, 117 DPR 645, 656-657 (1986).[14] Coincidimos con el Ministerio Público en que no hay razón alguna para intervenir con la discreción de la jueza sentenciadora al conferirle crédito a los testigos de cargo.

Por otro lado, en su último señalamiento de error, el apelante esboza que, aunque bajo los parámetros de la Ley Núm. 22-2000, el TPI no podía suspender los efectos de la sentencia de reclusión impuesta bajo el Art. 7.06, dicha Ley guarda silencio sobre la opción de restricción domiciliaria. Ante ello, arguye que el beneficio de la restricción domiciliaria era una alternativa a la imposición de la pena en este caso. No obstante, la Ley Núm. 22-2000 es clara en disponer que todos los casos en que una persona resulte convicta bajo dicho cuerpo legal serán sentenciados y se impondrá la sanción aplicable bajo la Ley. Por tanto, no era posible que la juzgadora de los hechos aplicara alguna otra pena bajo el Código Penal. El apelante no tiene derecho al beneficio de una restricción domiciliaria como pena alterna a su reclusión en la cárcel.

En ausencia de pasión, prejuicio, parcialidad o error manifiesto, no intervendremos con la apreciación de la prueba realizada por la juzgadora de los hechos, quien tuvo la oportunidad

---

[14] Además, recordemos que nuestro Tribunal Supremo en repetidas ocasiones ha puntualizado que la evidencia directa de un testigo que le merezca credibilidad puede ser suficiente para establecer un hecho. *Pueblo v. Chévere Heredia*, supra; Regla 110 de Evidencia, supra.

de escuchar y ver a los testigos declarar.[15] Los testimonios vertidos como prueba de cargo por el Ministerio Público fueron correctamente apreciados y creídos por el foro *a quo*. No nos convencen los argumentos del apelante. Así, del expediente no surge base alguna para alterar la decisión apelada, por lo cual procede confirmar la *Sentencia* apelada.

## IV.

Por las razones esbozadas, confirmamos la sentencia dictada contra Rodríguez Hernández.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[15] Respecto a la mejor posición en la que se encuentran los foros de instancia para apreciar y aquilatar la prueba desfilada ante sí, véase *Ortiz v. Cruz Pabón*, 103 DPR 939, 947 (1975).